Daniel J. LUGOSCH III, Robert L. Ungerer, John A. Bersani, Edward A. Kellogg, John C. Charters and Peter C. Steingraber, Plaintiffs–Counter–Defendants,

Richard K. Askin and William Tapella, Plaintiffs,

Capital Newspaper Division of the Hearst Corporation, Intervenor,

The Herald Company, Intervenor–Appellant,

v.

PYRAMID COMPANY OF ONONDAGA, EklecCo LLC, James A. Tuozzolo, Robert Brvenik, Marc A. Malfitano and Scott R. Congel, Defendants–Counter–Defendants–Appellees,

Robert V. Hunter, As Trustee of the Congel Family Trust which are General Partners of Woodchuck Hill Associates, Riesling Associates, Madeira Associates and Moselle Associates, George Schunck, As Trustee of the Congel Family Trust which are General Partners of Woodchuck Hill Associates, Riesling Associates, Madeira Associates and Moselle Associates, William Bucci, As Trustee of the Congel Family Trust which are General Partners of Woodchuck Hill Associates, Riesling Associates, Madeira Associates and Moselle Associates, S & R Group, Inc., Bontel Corporation and DiMarco, Abiusi & Pascarella, Certified Public Accountants, P.C., Defendants–Appellees,

Riesling Associates, Madeira Associates, Moselle Associates, Robert J. Congel and Woodchuck Hill Associates, Defendants–Counter–Claimants–Appellees.

Docket No. 05–3620–CV.

United States Court of Appeals, Second Circuit.

Argued: Nov. 15, 2005.

Decided: Jan. 10, 2006.

Michael J. Grygiel (John J. Privitera, William A. Hurst, on the brief), McNamee, Lochner, Titus & Williams, P.C., Albany, NY, for Appellant The Herald Company.

Christopher D. Moore (Paul F. Ware, Jr., David J. Apfel, Anthony S. Fiotto, Julie M. Wade, on the brief), Goodwin Procter LLP, Boston, MA, for all Appellees.

Before: MINER, KATZMANN, and WESLEY, Circuit Judges.

KATZMANN, Circuit Judge.

This case involves the efforts of certain news organizations to intervene to secure access to documents filed under seal in regard to a motion for summary judgment. It calls upon us to determine, *inter alia,* whether the media intervenors can appeal a district court order that was not a final

judgment, whether such documents constitute "judicial documents," and whether an immediate right of access under both the common law and First Amendment obtains.

In June 2004, the Herald Company and Capital Newspapers Division of the Hearst Corporation ("Newspapers") sought to intervene in *J. Daniel Lugosch, III et al. v. Robert J. Congel et al.*, 00–CV–0784 (NAM/RFT) (N.D.N.Y.), in which various plaintiffs, none of whom are parties to this appeal, alleged various financial improprieties in the business operations of defendant Pyramid Company of Onandaga, New York and its majority general partner Robert J. Congel. In particular, the Newspapers sought access to certain documents filed under seal in connection with the defendants' motion for summary judgment, arguing that these were "judicial documents" to which they had an immediate right of access under both the common law and First Amendment. Approximately nine months after the filing of the Newspapers' intervention motion, the magistrate judge (Treece, *M.J.*) to whom the motion had been referred issued an order holding the motion "in abeyance" until after the district court (Mordue, *J.*) ruled on the summary judgment motion, reasoning that it was not in a position to assess the strength of the Newspapers' argument until that time. Approximately four months after that, still without having ruled on the summary judgment motion, the district court upheld the magistrate judge's decision to hold the Newspapers' intervention motion in abeyance. The Herald Company now appeals this decision. We conclude that the district court erred in holding the motion in abeyance because the contested documents are judicial documents to which a presumption of immediate access applies under both the common law and the First Amendment. Because we are not in a position to assess whether the presumption is overcome by countervailing factors, we remand for the district court to make specific—and immediate—findings.

## BACKGROUND

The underlying litigation in the district court pits the plaintiffs, who are minority general partners in ten general partnerships controlled by defendant Robert Congel, against Congel, The Pyramid Company, and associated defendants, which collectively operate over twenty large regional shopping centers in the Northeast. In their ten-count third amended complaint, the plaintiffs alleged civil RICO violations, fraud, conversion, conspiracy, aiding and abetting, breach of contract, breach of fiduciary duty, and constructive trust. Much of the case has already survived a motion to dismiss.

During the same period in which the lawsuit has proceeded, the defendants have been involved in lobbying the New York State Senate and the governor's office to obtain various tax credits and other sources of public funding to construct a highly publicized mega-mall in Syracuse, New York called "DestiNY USA." Although nothing about this particular construction project is at issue in the lawsuit, the plaintiffs' complaint generally raises questions about the business practices of the entities and individuals lobbying the state.

On May 7, 2004, the defendants filed a motion for summary judgment, attaching at least twenty-five sealed documents or sets of documents, for a total volume of approximately 4000 pages. On July 12, 2004, the plaintiffs filed their opposition to this motion, attaching at least fifteen volumes of sealed appendices, as well as a sealed memorandum of law and a sealed

response to the defendants' statement of material facts.

On June 23, 2004, the Newspapers filed a motion to intervene for the limited purpose of obtaining immediate public access to the sealed motion papers under the common law and the First Amendment. The Newspapers' motion papers were accompanied by a proposed Order to Show Cause that the Newspapers requested be made returnable no later than June 30, 2004.[1] The district court did not act within this requested time frame. Instead, almost a month later, in a letter dated July 20, 2004, the district court informed counsel that he was referring the motion to intervene and the proposed Order to Show Cause to a magistrate judge. The district court also commented on the Newspapers' request for leave to attend oral argument on defendants' summary judgment motion:

> As matters now stand, the Court does not intend to hear oral argument on the summary judgment motion, but rather intends to take the motion on submission. Therefore, this issue is moot. In the event that the Court ultimately decides to hear oral argument, all parties and the newspapers will be notified.

On August 11, 2004, the magistrate judge signed an Order to Show Cause, "find[ing] that such an intervention may have merit." The magistrate judge cautioned, however, that "[w]hile the Court acknowledges the important constitutional issues at stake herein, in light of the pace of this litigation and the fact that the pending summary judgment motion has not been fully briefed, the Court does not

share the Proposed Intervenors' sense of urgency in terms of expediting the within matter." Accordingly, the magistrate judge set August 20, 2004 as the deadline for the Newspapers to serve the court's order and the motion papers on the parties; thirty days after August 20 as the deadline for any responses to the motion; and fifteen days after that for any reply papers. The magistrate judge then stated that "[u]pon receipt and consideration of all papers submitted, as set forth above, the Court will then set a date for oral argument."

In accordance with these deadlines, the motion to intervene was fully briefed as of September 28, 2004, three months after the motion had been filed. However, the magistrate judge apparently never conducted oral argument.

In a letter agreement between the Newspapers and the defendants dated November 5, 2005, the defendants agreed to withdraw their objections to public disclosure except for the portions of the parties' summary judgment materials for which defendants claimed attorney-client privilege.[2] For their part, the Newspapers agreed not to object to certain redactions of personal information. The letter agreement also provided that in the event the district court decided to hold oral argument on the pending summary judgment motion, the Newspapers' reporters would be authorized to be present in the courtroom during the argument. A copy of this letter agreement was sent to the magistrate judge on November 8, 2004.

---

1. This was the Newspapers' second motion to intervene; on January 30, 2004, the Newspapers had filed a motion to intervene to oppose the confidentiality order in place in the litigation to the extent that the order permitted certain discovery materials and related court records to be concealed from the public. The Newspapers withdrew this motion on March 17, 2004, based on a negotiated settlement with the defendants.

2. It is unclear whether the agreement also contained an exception for materials that defendants claimed were subject to the work product doctrine.

Months passed without any decision on the intervention motion. By letter dated March 7, 2005, in advance of a March 8, 2005 settlement conference among the parties, the Newspapers requested from the magistrate judge a prompt determination of their motion, noting that it had been fully submitted for over five months and pointing out that the sole remaining issue in contention was the extent to which the defendants' claims of privilege could overcome the public's presumptive First Amendment and common law right of access to the allegedly privileged documents.

Another month passed. By letter dated April 12, 2005, the Newspapers again requested that the magistrate judge issue a prompt decision on the motion to intervene, noting that the court had not acknowledged or responded to their March 7 letter. The Newspapers stated that unless the Court rendered a decision by April 20, 2005, the Newspapers would seek immediate relief in the form of a mandamus petition filed with this Court.

On April 15, 2005, the magistrate judge finally issued an order on the intervention motion. *Lugosch, et. al. v. Congel, et. al.,* 2005 WL 1523412 (N.D.N.Y. Apr.15, 2005). Instead of resolving the motion on the merits, however, the magistrate judge ordered that the motion be held "in abeyance" pending the district court's determination of the defendants' summary judgment motion. *Id.* at * 2. Regardless of whether the Newspapers were relying on a right of access under the common law or under the First Amendment, wrote the magistrate judge, such a right only attaches to "judicial documents." *Id.* at * 1. Quoting this Court's statements in *United States v. Amodeo,* 44 F.3d 141, 145 (2d Cir.1995) ("*Amodeo I*") that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document" and instead that "the

item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document," the magistrate judge concluded that it was "premature" to decide whether the documents at issue were judicial documents until the district court had ruled on the motion for summary judgment and it could be determined which documents were relevant and useful to that decision. *Id.* at * 2. The magistrate judge also noted that oral arguments in the summary judgment motion were scheduled for May 20, 2005. *Id.* at * 1.

The Newspapers filed with the district court objections to the magistrate judge's order pursuant to Rule 72 of the Federal Rules of Civil Procedure. As part of their responses to the Newspapers' objections, the defendants called into question, *inter alia,* the value of the contested documents to the district court in ruling on the summary judgment motion. In turn, the plaintiffs, while taking no position on the Rule 72 objections, wrote to the district court in part to contest this assertion by the defendants, noting that they indeed intended to rely on some of the contested documents at oral argument and seeking guidance from the court on the use of those documents at oral argument. On May 17, 2005, the district court rescheduled the oral argument to May 25, 2005, and on May 23, 2005, the district court rescheduled the oral argument to June 29, 2005. While the first adjournment was at the request of counsel, the record does not explain the reason for the second adjournment.

On June 22, 2005, while the Rule 72 objections were still *sub judice,* the Newspapers wrote to the district court in anticipation of the June 29 oral argument on the summary judgment motion, objecting in advance to any motion of the defendants to

seal the courtroom unless the district court made on-the-record, particularized findings of fact that nondisclosure of the contested documents was essential to preserve a compelling interest.

On June 24, 2005, the district court issued a Memorandum Decision and Order rejecting the Rule 72 objections and approving the magistrate judge's April 15, 2005 order holding in abeyance the Newspapers' motion to intervene until after the district court ruled on the defendants' motion for summary judgment. *Lugosch, et. al. v. Congel, et. al.,* 2005 WL 1523409 (N.D.N.Y. June 24, 2005). While "in many cases it may be reasonable to assume that all papers filed in connection with a summary judgment motion have relevance and utility to the judicial function" and are thus judicial documents under *Amodeo I,* the district court noted, "such an assumption does not necessarily apply in the unusual circumstances of this case," where the parties have conducted forty depositions and exchanged over two million pages of documents, where privileged documents were disclosed in reliance on a confidentiality order, and where it is plaintiffs, rather than defendants, who submitted defendants' privileged information in their opposition to the summary judgment motion and did so "wholesale" as part of a fifteen-volume appendix. *Id.* at * 2. Agreeing with the magistrate judge that it was "doubtful that the entirety of this massive motion record" would be relevant and useful to the judicial function, the district court held that the magistrate judge's conclusion—that it was premature to determine whether the contested documents were judicial documents—was "certainly not 'clearly erroneous or contrary to law.' " *Id.*

"Moreover," the district court concluded, "even assuming that the documents sought are judicial documents," it could not assess the weight given to the presumption of access to judicial documents, because it was not yet aware of which documents would "play a substantial role in determining litigants' substantive rights." *Id.* at * 3. The district court explained:

Here, if the Court decides the pending summary judgment motions on a preliminary procedural ground without reaching the merits, it is likely that the bulk of the record will pertain to issues which the Court never considers at all. Or, if the Court denies summary judgment after finding questions of fact on a single significant issue, it might not reach any other issue on the motions. Likewise, it is always possible that the motions may be withdrawn or the case settled before the Court issues its decision, as a result of which there will have been no judicial action with respect to which the documents may be relevant or useful. . . . On the other hand, the Court may grant either partial or complete summary judgment, which might well give rise to a strong presumption of public access to much—if not all—of the record. Obviously, then, the strength of the presumption of public access to the sealed documents cannot be measured at this time.

*Id.* The district court further stated that it was similarly unable to balance the presumption of access against countervailing factors such as the defendants' privacy interests and their interests in "unwarranted reputational injury" until it decided the summary judgment motion. *Id.* at * 4.

Finally, the district court observed that "to the extent that there is a First Amendment right to access to judicial documents filed in civil cases, such a right would require the Court to determine whether the documents sought were 'judicial documents,' and, if so, whether a 'compelling interest' militates against access," conclud-

ing without further analysis that "an attempt to determine these questions at this point would be premature." *Id.* The district court thus affirmed the magistrate judge's order holding the motion for intervention in abeyance pending the determination of the underlying summary judgment motion.

On June 28, 2005, the day before oral argument on the summary judgment motion was scheduled to be heard, the Newspapers wrote to the district court "as the consequence of the Court's June 24, 2005" order to object one more time to the defendants' anticipated motion to close at least part of the proceeding. The Newspapers indicated that counsel and representatives of the Newspaper would be present in court the next day "to object to any attempt to close the summary judgment arguments and to address any concerns the Court may have in this regard." Shortly after 6 p.m. that day, the district court cancelled the argument, saying only that the motion would be decided on submission without providing any explanation for the change in plans.

This expedited appeal followed.[3] At the time of oral argument before this court—approximately 17 months after the intervention motion was filed and approximately 18 months after the summary judgment motion was filed—no decision on the summary judgment motion had yet been rendered.

## APPELLATE JURISDICTION

■ Before turning to the merits of the appeal, we must first consider whether we have jurisdiction to do so. Although the decision here appealed from—namely, the

district court's order holding the Newspapers' intervention motion in abeyance—was not a final judgment, the Newspapers assert that this Court nonetheless has jurisdiction under the collateral order doctrine of *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949), "a narrow exception to the general rule that interlocutory orders are not appealable as a matter of right." *Schwartz v. City of New York*, 57 F.3d 236, 237 (2d Cir.1995). "To fit within the collateral order exception, the interlocutory order must: [i] conclusively determine the disputed question, [ii] resolve an important issue completely separate from the merits of the action, and [iii] be effectively unreviewable on appeal from a final judgment." *United States v. Graham*, 257 F.3d 143, 147 (2d Cir.2001) (internal quotation marks and citations omitted; alteration in original).

We have previously allowed media intervenors to appeal from apparently interlocutory orders under the collateral order doctrine on the grounds that orders denying access are final as to the intervenors and that the intervention motion could have been treated as a separate civil case in which the ruling would have been final. *See, e.g., ABC, Inc. v. Stewart*, 360 F.3d 90, 97 (2d Cir.2004); *In re New York Times Co.*, 828 F.2d 110, 113 (2d Cir.1987). The instant matter stands in a slightly different posture from those cases, however, as the district court held "in abeyance" the intervention motion rather than outright denying it. The defendants argue that because of this distinction, there was no conclusive determination of the disputed question and the appeal should be dismissed for want of

---

**3.** While both Capital Newspaper Division and the Herald Company participated in the original notice of appeal and the request for an expedited appeal, an amended notice of appeal filed July 28, 2005 lists only the Herald Company as appellant. In the interests of consistency, we will continue to refer to the Newspapers in the plural, rather than only to the Herald Company.

jurisdiction. *See, e.g., Sierra Rutile Ltd. v. Katz,* 937 F.2d 743, 748 (2d Cir.1991) ("We fail to see how the district court's decision to decide at a later time the question of jurisdiction conclusively determines the issue; rather, the district court simply postponed a determination of the remand motion."); *Moran Towing & Transp. Co. v. United States,* 290 F.2d 660, 662 (2d Cir.1961); *Larsen v. Wright & Cobb Lighterage Co.,* 167 F.2d 320, 322 (2d Cir.1948).

■ However, in none of the cases dealing with motions held "in abeyance" was the relief sought dependent on timing. Here, in contrast, the Newspapers seek *immediate* right of access to the contested documents, bringing the instant matter more within the ambit of our other cases dealing with media intervenors. For example, *In re New York Times Company* presented a situation in which various news bureaus moved to make public certain motion papers filed under seal in a criminal case and the district court denied those motions to protect the criminal defendants' fair trial rights and the privacy interests of third parties. *See In re New York Times Co.,* 828 F.2d at 111–12. We concluded that the orders there challenged were appealable under the collateral order doctrine because "deferral of a ruling on appellants' claims until a final judgment in the underlying criminal prosecution is entered would effectively deny appellants much of the relief they seek, namely, *prompt* public disclosure of the motion papers." *Id.* at 113 (italics added). Similarly, in *Graham,* we compared the media intervention motion at stake in that case to the one in *In re Application of National Broadcasting Co.,* 635 F.2d 945 .(2d Cir. 1980), noting that the collateral order doctrine applied in both cases because the interlocutory order "involves alleged rights of the networks as third parties to the criminal litigation and since the deferral of

a ruling on their claim until appeal from the judgments of conviction would further deny them the relief they seek—namely, *contemporaneous* televising of the tapes." *Graham,* 257 F.3d at 147–48 (italics added) (internal quotation marks omitted). Because in both of these cases, as here, the crucial issue was the media's request for immediate release of contested material, in response to which the district courts took an action that did not result in such immediate release, these cases are more on point than the cases relied on by defendants, which simply discuss the general effect of a motion being held "in abeyance." *Cf. Nebraska Press Ass'n v. Stuart,* 423 U.S. 1327, 1329, 96 S.Ct. 251, 46 L.Ed.2d 237 (1975) (Blackmun, *J.,* in chambers) (holding that where state supreme court has not taken timely action to address prior restraint on media raising First Amendment issues "delay itself is a final decision"). Indeed, it is clear that the district court's decision here did conclusively resolve a disputed issue—whether the Newspapers had a right of *immediate* access to the contested documents—and accordingly, the first prong of the collateral order doctrine is satisfied.

The defendants argue that the second prong of the collateral order doctrine is not met because the issue of immediate release of the contested documents is intertwined with the underlying summary judgment motion. In so arguing, they rely on the district court's statement that an analysis of which documents are judicial documents could only be completed after a ruling on the summary judgment motion, because only at that time will the district court know which documents were relevant and useful to the judicial function under the *Amodeo I* test. But, as is clear from our analysis in the next section, we do not need to say anything about the merits of the plaintiffs' underlying racketeering and fraud allegations in order to

rule on the propriety of the district court's order as to the Newspapers. The question of public access to the contested documents is thus completely separate from the merits of the underlying action, satisfying the second prong. *See SEC v. TheStreet.com,* 273 F.3d 222, 228 (2d Cir.2001) (holding that the second prong of the collateral order doctrine was met because "the issue of disclosure of the Confidential Testimony was wholly separate from the underlying merits of the action, which involved alleged violations of the securities law").

As to the third prong, it is patently clear that the denial of "prompt public disclosure" the Newspapers seek will be unreviewable, not to mention any damage irreparable, on appeal from a final judgment. *See In re New York Times Co.,* 828 F.2d at 113. Accordingly, we find that the district court's order falls within the collateral order doctrine, and we thus have jurisdiction to review it.

## DISCUSSION

### A.

The common law right of public access to judicial documents is firmly rooted in our nation's history. *See Amodeo I,* 44 F.3d at 145. We have explained the rationale for this right as follows:

> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although

courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir.1995) ("*Amodeo II* ").

■■■ Before any such common law right can attach, however, a court must first conclude that the documents at issue are indeed "judicial documents." In *Amodeo I,* we held that "the mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." 44 F.3d at 145. In order to be designated a judicial document, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Id.*

■■■ Once the court has determined that the documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption. "[T]he weight to be given the presumption of access must be governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts. Generally, the information will fall somewhere on a continuum from matters that directly affect an adjudication to matters that come within a court's purview solely to insure their irrelevance." *Amodeo II,* 71 F.3d at 1049.

■ Finally, after determining the weight of the presumption of access, the court must "balance competing considerations against it." *Id.* at 1050. Such countervailing factors include but are not limited to "the danger of impairing law enforcement or judicial efficiency" and "the privacy interests of those resisting disclosure." *Id.*

■ In addition to the common law right of access, it is well established that the public and the press have a "qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." *Hartford Courant Co. v. Pellegrino,* 380 F.3d 83, 91 (2d Cir.2004). We have articulated two different approaches for determining whether "the public and the press should receive First Amendment protection in their attempts to access certain judicial documents." *Id.* at 92. The so-called "experience and logic" approach requires the court to consider both whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." *Id.* (quoting *Press–Enterprise Co. v. Superior Court,*

478 U.S. 1, 8, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986)). "The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." *Id.* The second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings." *Id.* at 93.[4]

■ A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry. "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co.,* 828 F.2d at 116 (internal quotation marks omitted). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.*

## B.

■ While the district court stated these legal frameworks correctly, we think it was nonetheless error for the district court to conclude that it could not make

4. Defendants argue that the First Amendment right of access to judicial documents is well established only as to documents in criminal cases. They cite for this proposition then-District Judge Pooler's statement in *In re Savitt/Adler Litigation* that "Although the public and press have a qualified First Amendment right of access to criminal trials and to documents filed in connection with criminal pre-trial motions, as well as to civil trials, neither the Second Circuit nor the Supreme Court has held that the public has a First Amendment right of access to documents filed in civil lawsuits." 1997 WL 797511, at *3 (N.D.N.Y. Dec.23, 1997) (internal citations omitted). Defendants claim that this "statement of law, made in 1997, remains true today," and refer to our decision in *Hartford Courant* as being the "furthest this Court has ventured in this area" and yet still finding only a qualified First Amendment right to docket sheets, rather than all civil documents wholesale. But this reading of *Hartford Courant* misses the point of the overall First Amendment analysis in that case, which elides the distinction between the criminal and civil in outlining an approach to determine whether a qualified First Amendment right exists. It may well be that there are some differences in how a court will rule on access to documents in criminal and civil cases, but that will arise only through application of the same "experience and logic" and "necessary corollary" approaches. Moreover, the defendants' argument that there is no absolute First Amendment right of access to such documents is beside the point, given that the Newspapers concede, as indeed they must, that any right of access is not absolute.

any determinations under the frameworks until it had ruled on the underlying summary judgment motion. Our precedents indicate that documents submitted to a court for its consideration in a summary judgment motion are—as a matter of law—judicial documents to which a strong presumption of access attaches, under both the common law and the First Amendment.

In *Joy v. North*, 692 F.2d 880 (2d Cir. 1982), decided over a decade before we set forth in *Amodeo I* and *Amodeo II* the standard for determining when a document is a judicial document and what the weight of the presumption of access should be, we stated definitively that "documents used by parties moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." 692 F.2d at 893. Nothing in either *Amodeo* case changes this conclusion, which effectively states that there is a presumption of access to documents submitted on a summary judgment motion. The justification offered in *Joy v. North* for this conclusion is that summary judgment is an adjudication, and "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny." *Id.* While the defendants are correct that the underlying summary judgment motion in *Joy v. North* had already been decided when the motion for access to the documents was made, nothing about that timing was relevant to our conclusion in that case.

In arguing that the district court cannot rightly decide whether the documents are judicial documents until after it rules on the summary judgment motion, defendants primarily rely on dicta in *Amodeo II* where we suggested that the weight of the presumption of access may vary according to the outcome of the motion under consideration by the court. More precisely, in discussing the continuum along which the strength of the presumption will be measured, we explained that where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches. *Amodeo II*, 71 F.3d at 1049. Moving down the continuum, away from "matters that directly affect an adjudication" and towards "matters that come within a court's purview solely to insure their irrelevance," we explained that "the weight of the presumption declines." *Id.* Considering briefly what might fall into the middle of the continuum, we noted that "[o]ne judge has pointed out, for example, that where a district court '*denied* the summary judgment motion, essentially postponing a final determination of substantive legal rights,' the public interest in access 'is not as pressing.'" *Id.* (quoting *In re Reporters Comm. for Freedom of the Press*, 773 F.2d 1325, 1342 n. 3 (D.C.Cir. 1985) (Wright, J., concurring in part and dissenting in part)). At the low end of the continuum, "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." *Id.* at 1050.

Defendants read the above reference as standing for the proposition that until a district court knows the disposition of the underlying motion, any attempt at calling something a judicial document is premature. This reading cannot stand. First, this reference—neither central to our holding nor a point of thorough analysis—was simply a quotation from a partial concurrence and partial dissent in the D.C. Circuit, not even the position of the D.C. Circuit itself; the conclusion that the defendants press here is thus not the considered decision of either this court or the D.C. Circuit. It is true that we further

referred to this idea in *Graham*, 257 F.3d at 151, but this additional reference does not make defendants' overall argument any stronger, since the reference was merely in summary of *Amodeo II*, and no question of the timing of the summary judgment decision was presented in *Graham*. Moreover, the reference relates only to the weight of the presumption of access, not to whether something is a judicial document to begin with. Finally, we find this argument unconvincing on the merits. As the Third Circuit has sensibly said,

> When [defendant] filed its motion for summary judgment, it did so in the hope that it would be a dispositive motion, and with the belief that it was entitled to such relief. Fed.R.Civ.P. 11 requires no less. We assume that [defendant] followed the requirement of Rule 56 and supported its motion only on the basis of "such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Thus, if, as [defendant] concedes, there would have been a right of public access had the motion been granted, we fail to see why such a right did not attach merely because the motion was denied.

*Republic of the Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 660 (3d Cir.1991). That it is the plaintiffs, rather than the defendants, who have put the contested documents in their motion papers in the case before us is irrelevant to our analysis under *Joy v. North*, which explicitly did not distinguish between the moving and opposing party in concluding that there is a presumption of access to documents submitted to the court at summary judgment. 692 F.2d at 893. Indeed, the logic of the Third Circuit applies equally to the plaintiffs' responsive submissions on summary judgment, as they may similarly be assumed to have supported their papers with admissible evidence and non-frivolous arguments.

The weight of authority in other circuits supports this conclusion. The First Circuit has clearly held that "relevant documents which are submitted to, and accepted by, a court of competent jurisdiction in the course of adjudicatory proceedings, become documents to which the presumption of public access applies," a framing that has nothing to do with how a court ultimately comes out on a motion. *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 409 (1st Cir.1987). The Fourth Circuit has commented that "[b]ecause summary judgment adjudicates substantive rights and serves as a substitute for a trial, we fail to see the difference between a trial and the situation before us now" (where documents were submitted to the court on a summary judgment motion), concluding that a presumption of access attaches to "documents filed in connection with a summary judgment motion in a civil case." *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 252–53 (4th Cir.1988). The Ninth Circuit has explained that "the unbroken string of authorities ... leaves little doubt" that "the federal common law right of public access extends to materials submitted in connection with motions for summary judgment in civil cases prior to judgment." *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1102 (9th Cir. 1999); *see also In re Continental Illinois Sec. Litig.*, 732 F.2d 1302, 1309 (7th Cir. 1984) (where motion to terminate "was designed to (and did) result in the dismissal of claims against several defendants" and "district court was required to make complex factual and legal determinations in a proceeding which has been characterized as a 'hybrid summary judgment motion,' ... the presumption of access applies to the hearings held and evidence introduced in connection with [the party's] motion to terminate"); *In re "Agent Orange" Product Liability Litig.*, 98 F.R.D. 539,

545 (E.D.N.Y.1983) ("Clearly, then, documents attached to and referred to in the parties' papers on the summary judgment motions are part of the court record and are entitled to the presumption of public access."). As a matter of law, then, we hold that the contested documents—by virtue of having been submitted to the court as supporting material in connection with a motion for summary judgment—are unquestionably judicial documents under the common law.

As to the weight of the presumption given to such documents, *Joy v. North* has already clarified that the presumption is of the highest: "documents used by parties moving for, or opposing, summary judgment should not remain under seal *absent the most compelling reasons.*" 692 F.2d at 893 (italics added). Nor was the district court correct to suggest that different types of documents might receive different weights of presumption based on the extent to which they were relied upon in resolving the motion. "If the rationale behind access is to allow the public an opportunity to assess the correctness of the judge's decision ... documents that the judge *should* have considered or relied upon, but did not, are just as deserving of disclosure as those that actually entered into the judge's decision." *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litig.*, 101 F.R.D. 34, 43 (C.D.Cal.1984) (italics in original). Moreover, "[o]nce those submissions come to the attention of the district judge, they can fairly be assumed to play a role in the court's deliberations." *Standard Fin. Mgmt. Corp.*, 830 F.2d at 409. Finally, "to equate the weight of the presumption with the disposition of each particular claim would require the Court to review the documents under varying standards, which would be extremely difficult and a waste of judicial resources." *The Diversified Group, Inc. v. Daugerdas*, 217 F.R.D. 152, 159 n. 5 (S.D.N.Y.2003).

Defendants argue that the weight of the presumption of public access is not great because the Newspapers' true motive is not to monitor the judicial process or promote public confidence in the judicial system but rather to "dissect[ ] the business practices of one of the defendants in this case." But, as already explained by this Circuit, consideration of the Newspapers' ultimate interest in the case should not affect the weight of the presumption:

> Although the presumption of access is based on the need for the public monitoring of federal courts, those who seek access to particular information may want it for entirely different reasons. However, we believe motive generally to be irrelevant to defining the weight accorded the presumption of access. It is true that journalists may seek access to judicial documents for reasons unrelated to the monitoring of Article III functions. Nevertheless, assessing the motives of journalists risks self-serving judicial decisions tipping in favor of secrecy. Where access is for the purpose of reporting news, moreover, those interested in monitoring the courts may well learn of, and use, the information whatever the motive of the reporting journalist.

*Amodeo II*, 71 F.3d at 1050. Thus, what the Newspapers seek to do with the documents has no effect on our consideration.[5]

---

**5.** Separate from the question of motive, the district court noted that the public interest in this "dispute among business partners" was not likely to add weight to a presumption of access, unlike in criminal matters or in the

Agent Orange class action litigation. However, this framing of the dispute ignores its broader context, in which the defendants are lobbying the state legislature and the governor to obtain preferred treatment in connec-

Having concluded that the common law presumption of access exists in this context, we may not avoid the question of whether a First Amendment presumption of access also exists, for the Newspapers ask us to impose the higher constitutional burden in requiring disclosure. *See, e.g., Rushford,* 846 F.2d at 253 (explaining that because "[t]he common law does not afford as much substantive protection to the interests of the press and the public as does the First Amendment," it was necessary to decide whether the magazine's interest "ar[o]se from the First Amendment or from the common law right of access"). Turning to this question, we find, as we did with the common law, that our precedents point in the direction of the existence of such a right, and we now join the Fourth Circuit in stating so clearly. *See id.* ("We believe that the more rigorous First Amendment standard should also apply to documents filed in connection with a summary judgment motion in a civil case.").

 We have previously held that "the First Amendment does secure to the public and to the press a right of access to civil proceedings." *Westmoreland v. Columbia Broad. Sys., Inc.,* 752 F.2d 16, 23 (2d Cir.1984). Because we noted in *Joy v. North* that summary judgment is an adjudication, and "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny," 692 F.2d at 893, oral arguments relating to a motion for summary judgment fall into the category of civil proceedings to which there is a First Amendment presumption of access,

as articulated in *Westmoreland.* And, as we said in *In re New York Times Co.,* "[o]ther circuits that have addressed [the] question have construed the constitutional right of access to apply to written documents submitted in connection with judicial proceedings that themselves implicate the right of access. We agree that a qualified First Amendment right of access extends to such documents." 828 F.2d at 114 (internal citations omitted). Moreover, "[a]ccess to written documents filed in connection with pretrial motions is particularly important in the situation ... where no hearing is held and the court's ruling is based solely on the motion papers." *Id.* We therefore conclude that there exists a qualified First Amendment right of access to documents submitted to the court in connection with a summary judgment motion.

## C.

 Notwithstanding the presumption of access under both the common law and the First Amendment, the documents may be kept under seal if "countervailing factors" in the common law framework or "higher values" in the First Amendment framework so demand. Since we have concluded that the more stringent First Amendment framework applies, continued sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim. *In re New York Times Co.,* 828 F.2d at 116.

tion with a business endeavor that is similar to those at issue in this case. *Cf. Brown & Williamson Tobacco v. Fed. Trade Comm'n,* 710 F.2d 1165, 1180 (6th Cir.1983) ("[T]he natural desire of parties to shield prejudicial information contained in judicial records from competitors and the public ... cannot

be accommodated by courts without seriously undermining the tradition of an open judicial system. Indeed, common sense tells us that the greater the motivation a corporation has to shield its operations, the greater the public's need to know.").

■ The defendants argue that the contested documents are subject to attorney-client privilege, which suffices to defeat the presumption of access. The Newspapers respond that submission by either party of a document as part of a summary judgment motion waives any claim to such privilege, attempting to rely on our statement in *Joy v. North* that "the submission of materials to a court in order to obtain a summary judgment utterly precludes the assertion of the attorney-client privilege." 692 F.2d at 894. That statement was made, however, in a situation where a party had attempted to rely on its own privileged documents to win summary judgment and had simultaneously sought to prevent disclosure of those documents. Here, by contrast, it is the plaintiffs who have put defendants' allegedly privileged documents in the record, not the defendants themselves. The Newspapers misread *Joy v. North* by insisting that that case precludes invocation of the privilege no matter which party puts the documents at issue, based on our statement there that "documents moving for, or opposing, summary judgment should not remain under seal absent the most compelling reasons." *Id.* at 893. Yet this statement says nothing about the question at hand, because attorney-client privilege might well be such a compelling reason. *See The Diversified Group, Inc.*, 217 F.R.D. at 160–161 & n. 7 (distinguishing *Joy*'s "offensive and selective use of privileged material by the holder of the privilege in order to obtain summary judgment" from the use of privileged information in the case at bar).

We are therefore left with a fact-specific inquiry as to whether (1) the contested documents are subject to attorney-client privilege, and (2) defendants waived the privilege by placing in issue the contents of the privileged information. *In re von Bulow v. von Bulow*, 828 F.2d 94, 102 (2d Cir.1987) (privilege may be waived when

holder of privilege makes assertions placing privileged information at issue); *see also United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.), *cert. denied*, 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 39 (1991) ("[P]rivilege may implicitly be waived when defendant asserts a claim that in fairness requires examination of protected communications."). There is nothing in the record to allow us to review or conduct such an inquiry. Accordingly, we remand for the district court to make the necessary findings.

■ As a secondary argument, defendants assert that the Newspapers are improperly trying to modify the confidentiality order pursuant to which the contested documents were disclosed in discovery. The district court suggested that the confidentiality order was a strong factor against access, referring to the district court's comment in *Kamyr AB v. Kamyr, Inc.*, 1992 WL 317529, at * 5 (N.D.N.Y. Oct.30, 1992), that without the confidentiality order, discovery would have come to a complete stand-still. However, as another district judge has said,

> [T]he argument that the defendants' reliance on [the confidentiality order] during years of discovery shields them now from the burden of justifying protection of the documents ignores the fact that civil litigants have a legal obligation to produce all information "which is relevant to the subject matter involved in the pending action," Fed.R.Civ.P. 26(b)(1), subject to exceptions not involved here. Thus, defendants cannot be heard to complain that their reliance on the protective order was the primary cause of their cooperation during years of discovery: even without [the confidentiality order], I would eventually have ordered that each discoverable item be turned over to the plaintiffs. Umbrella protective orders do serve to

facilitate discovery in complex cases. However, umbrella protection should not substantively expand the protection provided by Rule 26(c)(7) or countenanced by the common law of access. To reverse the burden in this situation would be to impose a significant and perhaps overpowering impairment on the public access right.

*In re Coordinated Pretrial Proceedings,* 101 F.R.D. at 43–44.

Moreover, the mere existence of a confidentiality order says nothing about whether complete reliance on the order to avoid disclosure was reasonable. *See SEC v. TheStreet.Com,* 273 F.3d at 231 ("Where a litigant or deponent could not reasonably have relied on the continuation of a protective order a court may properly permit modification of the order."). In fact, the confidentiality order specifically contemplates that relief from the provisions of the order may be sought at any time: "This Confidentiality Order shall not prevent anyone from applying to the Court for relief therefrom." Given this provision, it is difficult to see how the defendants can reasonably argue that they produced documents in reliance on the fact that the documents would always be kept secret. *See The Diversified Group, Inc.,* 217 F.R.D. at 160 (where "the parties' reliance on the confidentiality afforded by the Protective Order must have been tempered because the Order specifically provides that '[a]ny party or interested member of the public may request at any time that a "Confidential" designation be removed from any document or information,'" such "alleged reliance . . . is insufficient to outweigh the strong presumption in favor of public access."). Still, on remand, the defendants should have the opportunity to call the district court's attention to any particular circumstances surrounding the production of a contested document.

## CONCLUSION

We hold that documents submitted to a court in support of or in opposition to a motion for summary judgment are judicial documents to which a presumption of immediate public access attaches under both the common law and the First Amendment. Because the First Amendment presumption gives rise to a higher burden on the party seeking to prevent disclosure than does the common law presumption, the presumption of access here can be overcome only by specific, on-the-record findings that higher values necessitate a narrowly tailored sealing. Because holding the intervention motion in abeyance was a delay that was effectively a denial of any right to contemporaneous access— where "[e]ach passing day may constitute a separate and cognizable infringement of the First Amendment," *see Grove Fresh Distrib., Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir.1994) (quoting *Nebraska Press Ass'n,* 423 U.S. at 1329, 96 S.Ct. 251)—the district court erred not only in failing to make the specific, on-the-record findings required in order to justify its denial but also in failing to act expeditiously. *Cf. United States v. Antar,* 38 F.3d 1348, 1363 (3d Cir.1994) ("From the record before us, the district judge appears not to have recognized that maintaining the transcripts under seal, though a passive act, was an active decision requiring justification under the First Amendment."). We therefore vacate the district court's decision and remand for further proceedings consistent with this opinion.

We take this opportunity to emphasize that the district court must make its findings quickly. Our public access cases and those in other circuits emphasize the importance of immediate access where a right to access is found. *See, e.g., Gra-*

*ham,* 257 F.3d at 147–48 (noting importance of contemporaneous access); *Grove Fresh Distrib.,* 24 F.3d at 897 ("In light of the values which the presumption of access endeavors to promote, a necessary corollary to the presumption is that once found to be appropriate, access should be immediate and contemporaneous.... The newsworthiness of a particular story is often fleeting. To delay or postpone disclosure undermines the benefit of public scrutiny and may have the same result as complete suppression." (internal citations omitted)); *In re Continental Illinois Sec. Litig.,* 732 F.2d 1302, 1310 (7th Cir.1984) ("the presumption of access normally involves a right of *contemporaneous* access" (italics in original)); *Republic of the Philippines,* 949 F.2d at 664 ("[I]t is apparent to us that the public interest encompasses the public's ability to make a contemporaneous review of the basis of an important decision of the district court."); *In re Coordinated Pretrial Proceedings,* 101 F.R.D. at 43 ("Indeed, for the presumptive right to be suspended or nonexistent until after the judge has ruled on a motion, would be to impair the important interest in contemporaneous review by the public of judicial performance."). "[T]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Paulsen v. County of Nassau,* 925 F.2d 65, 68 (2d Cir.1991) (quoting *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). Here, the Newspapers had to wait for months during which the district court and magistrate judge seemingly took no action on their motion to intervene, and the underlying motion on whose indeterminate resolution the district court and magistrate judge relied has been pending for a year and a half. The public cannot properly monitor the work of the courts with long delays in adjudication based on secret documents.

Accordingly, to avoid any further delay in determining whether and to what extent the Newspapers are entitled to the relief they seek, the mandate shall issue forthwith.