RESTREPO, Circuit Judge, concurring in part and dissenting in part.
 

 I join the majority opinion in its entirety, with the exception of Part III.E. In that portion of the opinion, the majority, as a matter of constitutional avoidance, "decline[s] to define the parameters of the First Amendment" because, in the majority's view, "the common law right affords sufficient protection" in this case. I depart from the majority because, in my view, the Court should address the First Amendment issues raised by the plans. I write separately to express my view that the doctrine of constitutional avoidance is inapplicable to the facts of this case and that the First Amendment right of public access extends to documents submitted in connection with motions for summary judgment.
 

 I.
 

 The Court could reach the First Amendment issues in this case without running afoul of the doctrine of constitutional avoidance. The Supreme Court indeed has counseled that federal courts "should not decide federal constitutional questions where a dispositive nonconstitutional ground is available," but, in my view, the majority has not given proper weight to the key modifier in that clause-"dispositive."
 
 Hagans v. Lavine
 
 ,
 
 415 U.S. 528
 
 , 547,
 
 94 S.Ct. 1372
 
 ,
 
 39 L.Ed.2d 577
 
 (1974). In other words, federal courts should avoid deciding constitutional questions only when there is a nonconstitutional ground that "bring[s] about a final determination."
 
 Dispositive
 
 , Black's Law Dictionary (10th ed. 2014). While I agree with the majority that this case should be remanded for the District Court to apply the appropriate standard under the common law right of access, such a holding is not
 
 dispositive
 
 : we cannot be certain that "the common law right affords sufficient protection" in this case because the District Court will make that determination on a document-by-document basis on remand.
 

 The majority appears to acknowledge that our holding is not a final determination on the merits of this matter insofar as the majority recognizes that this litigation will continue, and the Court subsequently will be required to address the First Amendment issues, if the District Court finds on remand that certain of the sealed documents merit continued confidentiality under the more lenient common law right of access standard. In such an event, as one of our sister circuits has recognized, "[e]ach passing day" between the District Court's decision to maintain the confidentiality of a sealed document and this Court's eventual adjudication of the First Amendment issues "may constitute a separate and cognizable infringement of the First Amendment."
 
 Lugosch v. Pyramid Co. of Onondaga
 
 ,
 
 435 F.3d 110
 
 , 126 (2d Cir. 2006) (quoting
 
 Grove Fresh Distrib., Inc. v. Everfresh Juice Co.
 
 ,
 
 24 F.3d 893
 
 , 897 (7th Cir. 1994) ). Thus, given the possibility that our present avoidance of the First Amendment issues may result in a potentially continual constitutional violation if, on remand, the District Court does not unseal particular documents, our holding cannot be fairly characterized as "dispositive." For that reason, we should address the First Amendment issues raised by the plans.
 

 The cases cited by the majority-in which this Court utilized only the common law right of access standard, rather than the more rigorous First Amendment standard-do not persuade me otherwise. In all but one of the cited cases, this Court definitively held that the documents in question should be unsealed pursuant to the common law right of access, leaving no room for doubt as to whether it might later become necessary to apply the more rigorous First Amendment standard to unseal such documents.
 
 See
 

 In re Cendant Corp.
 
 ,
 
 260 F.3d 183
 
 , 201 (3d Cir. 2001) (directing "the District Court [to] enter an order unsealing all sealed bids and documents in the record");
 
 Republic of the Philippines v. Westinghouse Elec. Corp.
 
 ,
 
 949 F.2d 653
 
 , 665 (3d Cir. 1991) (denying a stay pending appeal of the district court's order "unsealing the material filed in connection with Westinghouse's motion for summary judgment");
 
 Littlejohn v. Bic Corp.
 
 ,
 
 851 F.2d 673
 
 , 687 (3d Cir. 1988) (affirming "the district court['s] order granting [the
 
 Philadelphia Inquirer
 
 ] access to the judicial records");
 
 Bank of Am. Nat'l Tr. & Sav. Ass'n v. Hotel Rittenhouse Assocs.
 
 ,
 
 800 F.2d 339
 
 , 346 (3d Cir. 1986) (remanding to the district court with the direction to enter an order unsealing documents relating to a settlement agreement). Unlike this case, the Court, in each
 of the above-cited cases, did not remand to the district court to apply the appropriate standard under the common law right of access; rather, in each of the above-cited cases, the Court's holding was
 
 dispositive
 
 of all the issues, and thus it was proper for the Court to decline to adjudicate First Amendment claims. Further, in the remaining case cited by the majority, the appellant "d[id] not rely on the First Amendment as the basis for his claimed right of access to the discovery material," and thus constitutional avoidance was not at issue.
 
 Leucadia, Inc. v. Applied Extrusion Techs., Inc.
 
 ,
 
 998 F.2d 157
 
 , 162 (3d Cir. 1993). In contrast, the plans and amici explicitly raised First Amendment issues in this case.
 

 For the reasons stated above, I respectfully disagree with the majority's decision not to address the First Amendment issues raised by the plans in this case, and I would join our two sister circuits that took up this constitutional issue when it was presented to them in a similar posture.
 
 See
 

 Lugosch
 
 ,
 
 435 F.3d at 124
 
 ("[W]e may not avoid the question of whether a First Amendment presumption of access also exists, for the Newspapers ask us to impose the higher constitutional burden in requiring disclosure.");
 
 accord
 

 Rushford v. New Yorker Magazine, Inc.
 
 ,
 
 846 F.2d 249
 
 , 253 (4th Cir. 1988). As a result of the Court's holding, the adjudication of the First Amendment issues hinges on the outcome of the District Court's fact-finding on remand, and, in the meantime, constitutional rights potentially are being abridged on a continual basis. Such a result, in my view, is not dispositive of all the issues in this case, and therefore the doctrine of constitutional avoidance does not bar us from reviewing the First Amendment issues raised by the plans.
 

 II.
 

 Having determined that the Court should address the First Amendment issues raised by the plans,
 
 [1]
 
 I would join the Second and Fourth Circuits in holding that the First Amendment right of public access extends to documents filed in connection with motions for summary judgment.
 

 See
 

 Lugosch
 
 ,
 
 435 F.3d at
 
 124 ;
 
 Rushford
 
 ,
 
 846 F.2d at 253
 
 .
 

 This Court previously has held that "the First Amendment, independent of the common law, protects the public's right of access to the records of civil proceedings"-specifically, civil trials.
 
 Westinghouse
 
 ,
 
 949 F.2d at
 
 659 (citing
 
 Publicker Indus., Inc. v. Cohen
 
 ,
 
 733 F.2d 1059
 
 , 1070 (3d Cir. 1984) ). Since the Court first recognized a First Amendment right of public access to civil trials in
 
 Publicker
 
 ,
 
 733 F.2d 1059
 
 , however, summary judgment has played an increasingly prominent role in federal civil litigation. As one distinguished jurist has noted, "[t]he expanding federal caseload has contributed to a drift in many areas of federal litigation toward substituting summary judgment for trial."
 
 Wallace v. SMC Pneumatics, Inc.
 
 ,
 
 103 F.3d 1394
 
 , 1397 (7th Cir. 1997) (Posner, C.J.). This view has been echoed by commentators.
 
 See, e.g.
 
 , Samuel Issacharoff & George Loewenstein,
 
 Second Thoughts About Summary Judgment
 
 ,
 
 100 Yale L.J. 73
 
 , 89 (1990) ("There is evidence ... that summary judgment has moved beyond its originally intended role as a guarantor of the existence of material issues to be resolved at trial and has been transformed into a mechanism to assess plaintiff's likelihood of prevailing at trial."). Statistical analysis performed by the Federal Judicial Center supports these commentators' claims and confirms that district courts are granting motions for summary judgment more frequently: between 1975 and 2000, "the rate of cases with [summary judgment] motions granted in whole or in part, and the rate at which cases were terminated by summary judgment, doubled." Joe S. Cecil et al., Fed. Judicial Ctr.,
 
 Trends in Summary Judgment Practice: 1975-2000
 
 , at 20 (2007), https://www.uscourts.gov/sites/default/files/summary_judgment_1975-2000.pdf.
 

 Given the increasing frequency with which district courts utilize summary judgment to resolve federal civil litigation, in my view, the First Amendment public right of access that this Court extended to "records of civil proceedings,"
 
 Westinghouse
 
 ,
 
 949 F.2d at
 
 659 (citing
 
 Publicker
 
 ,
 
 733 F.2d at
 
 1070 ), also extends to documents submitted in connection with motions for summary judgment. As the Fourth Circuit recognized, "summary judgment adjudicates substantive rights and serves as a substitute for a trial," and thus there is no principled basis to hold that the First Amendment right of public access extends to records of civil trials, but not records submitted in connection with motions for summary judgment.
 
 Rushford
 
 ,
 
 846 F.2d at 252
 
 . Further, much of the Supreme Court's rationale in
 
 Press-Enterprise Co. v. Superior Court (Press-Enterprise II)
 
 ,
 
 478 U.S. 1
 
 ,
 
 106 S.Ct. 2735
 
 ,
 
 92 L.Ed.2d 1
 
 (1986) -a seminal right-of-access case in which the Supreme Court held that the First Amendment right of public access extends not only to criminal trials, but also to preliminary hearings in criminal cases-applies with equal force to summary judgment proceedings. Because of the modern trend toward resolving civil litigation through motions for summary judgment, in many cases, the summary-judgment stage "is often the final and most important step" of civil litigation.
 

 Id.
 

 at 12
 
 ,
 
 106 S.Ct. 2735
 
 . Further, given that motions for summary judgment are adjudicated solely by judges, "the absence of a jury, long recognized as 'an inestimable safeguard against ... the compl[ia]nt, biased, or eccentric judge,' ... makes the importance of public access to [summary judgment proceedings] even more significant."
 

 Id.
 

 at 12-13
 
 ,
 
 106 S.Ct. 2735
 
 (citations omitted) (quoting
 
 Duncan v. Louisiana
 
 ,
 
 391 U.S. 145
 
 , 156,
 
 88 S.Ct. 1444
 
 ,
 
 20 L.Ed.2d 491
 
 (1968) ).
 

 For the reasons stated above, the Court should hold that the First Amendment right of public access extends to documents submitted in connection with motions for summary judgment. In light of the contemporary trend toward disposing of civil cases through summary judgment, the public should have a qualified right to view the documents submitted by parties in connection with motions for summary judgment. As the Supreme Court has stated, "[p]eople in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing."
 
 Richmond Newspapers, Inc. v. Virginia
 
 ,
 
 448 U.S. 555
 
 , 572,
 
 100 S.Ct. 2814
 
 ,
 
 65 L.Ed.2d 973
 
 (1980). The public can only have confidence in the propriety of summary judgment procedure-which plays an increasingly important role in civil litigation-if the documents that form the bases of district courts' decisions to grant summary judgment are open for review and inspection, rather than shielded from public scrutiny.
 

 III.
 

 In sum, I respectfully disagree with the majority's application of the doctrine of constitutional avoidance, which should only be invoked by a federal court when the court can decide a case on a "
 
 dispositive
 
 nonconstitutional ground."
 
 Hagans
 
 ,
 
 415 U.S. at 547
 
 ,
 
 94 S.Ct. 1372
 
 (emphasis added). The doctrine of constitutional avoidance is prudential in nature, yet its invocation in this case may lead to the imprudent result of piecemeal litigation while constitutional rights potentially are being violated on a continual basis. Therefore, it is not only appropriate, but also
 
 necessary
 
 , for the Court to address the First Amendment issues raised by the plans at this juncture, and I would resolve the First Amendment issues in favor of transparency and broader public access to the federal courts.
 

 As an ancillary matter, GSK's argument regarding the plans' lack of "standing" is something of a misnomer. This is not a case in which a named plaintiff failed to demonstrate Article III standing to bring the substantive claim in a complaint on behalf of a putative class; it is undisputed that the District Court has jurisdiction over the underlying matter. Rather, this appeal arises out of the District Court's grant of two motions filed by GSK in the underlying matter to preserve the confidentiality of the documents submitted in connection with its motion for summary judgment. The plans opposed both of these motions and, either explicitly or through citation to case law, raised (and, consequently, preserved) arguments with respect to the First Amendment right of public access. The plans-as the named plaintiffs in a putative class action-are required to "fairly and adequately protect the interests of the class," Fed. R. Civ. P. 23(a)(4), in order "to ensure that absentees' interests are fully pursued,"
 
 Georgine v. Amchem Prods., Inc.
 
 ,
 
 83 F.3d 610
 
 , 630 (3d Cir. 1996). The obligation to protect the interests of the class undoubtedly extends to opposing motions-and appealing orders-that adversely affect the interests of absentee class members, whose interests are at issue in a "peculiar" way when litigation centers on the right of access.
 
 See
 

 Cendant
 
 ,
 
 260 F.3d at 194
 
 (holding that the "right of access should be applied ... with particular strictness" due to "the peculiar posture of class actions whereby some members of the public are also parties to the class action"). To accept GSK's argument that the plans do not have "standing" to raise issues with respect to the First Amendment rights of absentee putative class members-who received notice of neither GSK's motions nor the District Court's orders and whose rights are peculiarly at issue-would be to contravene both the letter and spirit of Rule 23.