United States v. Erie County

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

———————————————————

August Term, 2013

(Argued:    June 18, 2014                                Decided: August 18, 2014)

Docket No. 13-3653-cv

———————————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

ERIE COUNTY, NEW YORK,

*Defendant-Appellee,*

v.

NEW YORK CIVIL LIBERTIES UNION (NYCLU),

*Intervenor-Appellant.*

———————————————————

Before: CALABRESI, PARKER, and LYNCH, *Circuit Judges.*

———————————————————

The United States brought an action against Erie County, alleging that two of the County's correctional facilities violated the federal constitutional rights of their inmates. The action was settled. Pursuant to the stipulated order of dismissal, the parties agreed that

compliance consultants were to prepare reports measuring the County's progress in improving conditions in the correctional facilities. The reports were to be filed with the district court, which retained jurisdiction over the matter. The district court (Skretny, *C.J.*) allowed those reports to be filed under seal, and the New York Civil Liberties Union ("NYCLU") sought to intervene in order to have the reports unsealed. The district court allowed NYCLU to intervene, but denied its motion to unseal the reports. We reverse this denial, and hold that the First Amendment requires public access to the reports.

ERIN ASLAN (Mark L. Gross, *on the brief*), *for* Jocelyn Samuels, Acting Assistant Attorney General, U.S. Department of Justice, Washington, D.C., *for Plaintiff-Appellee.*

MICHELLE M. PARKER, *for* Michael A. Siragusa, Erie County Attorney, Buffalo, N.Y., *for Defendant-Appellee.*

ALEXIS KARTERTON (Arthur Eisenberg, Jordan Wells, Christopher Dunn, *on the brief*), New York Civil Liberties Union, New York, N.Y., *for Intervenor-Appellant.*

CALABRESI, *Circuit Judge*:

This case is about public access to judicial documents.[1] The documents in this case are compliance reports, filed with the district court pursuant to a settlement agreement between the United States and Erie County. The reports measure Erie County's progress in improving the conditions of its prisons, which the United States alleged violated the Fourteenth and Eighth Amendments of the Constitution in the suit that led to the settlement agreement. If the reports

---

[1] Whether an equivalent right exists in other cases involving other government institutions is not before us, and we therefore express no view on that subject.

show that Erie County is failing to fulfill the conditions outlined in the settlement's stipulated order of dismissal, the United States is empowered to bring an enforcement proceeding, and the district court can provide "any relief permitted by law or equity." Joint App'x at 219.

Today, we hold that the public's fundamental right of access to judicial documents, guaranteed by the First Amendment, was wrongly denied when the compliance reports in this case were sealed. Accordingly, we reverse the district court's decision, and order that the judicial documents be unsealed.

I.

Following a two-year investigation into the conditions of confinement at two Erie County correctional facilities, the United States brought an action in the Western District of New York against Erie County and several of its officials.[2] The action, filed in September of 2009, alleged that the conditions at the Erie County facilities violated the federal constitutional rights of the inmates housed there by failing (a) to protect them from harm, (b) to provide adequate mental health care or medical care, and (c) to engage in adequate suicide prevention.

In June of 2010, the District Court approved a partial settlement between the parties, which would resolve only the claims relating to suicide prevention. Pursuant to this agreement, the parties appointed a compliance officer, who would file with the Court reports measuring the extent to which Erie County was taking steps to prevent suicides.

---

[2] The action was brought pursuant to the Civil Rights of Institutionalized Persons Act of 1980, 42 U.S.C. § 1997a *et seq.*

3

The United States' other claims against Erie County remained. When Erie County moved to dismiss these claims, the District Court denied the motion but ordered the United States to file an amended complaint. The United States did so, alleging Eighth and Fourteenth Amendment violations for, *inter alia*, medical indifference, substandard mental health and medical care, and environmental health and safety failings.

In August of 2011, the United States and Erie County proposed a settlement agreement to resolve these remaining claims. Under the agreement, the claims against the individual defendant-officials were dismissed, and while Erie County did not admit wrongdoing, it did agree to implement practices and procedures to remediate what the United States had contended were unconstitutional conditions of confinement.

To ensure that the terms of the order were fulfilled, the settlement provided for the appointment of two compliance consultants. One would monitor mental health issues, and the other would oversee medical issues.[3] Every six months, the compliance consultants were to produce written reports—which are the focus of this litigation—outlining Erie County's progress, or lack thereof, in remedying the issues that led to the suit and settlement. The reports were first to be given to the parties, who could provide comment, and were then to be filed with the District Court. The compliance consultants would report to the Court whether Erie County was in substantial compliance, partial compliance, or non-compliance with the settlement agreement.

---

[3] Since the suicide prevention settlement was incorporated in this agreement, the above referenced compliance consultants would also replace the compliance officer selected under the initial suicide prevention settlement.

In an order entered later that August, the District Court agreed that the parties' proposed stipulated settlement order satisfied the requirements for prospective relief under the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1)(A), inasmuch as it was narrowly drawn and employed the least intrusive means to correct the alleged violations of the federal rights at issue. The Court therefore approved the stipulated order dismissing the government's suit, but it also retained jurisdiction over the matter until the terms of the settlement were fulfilled.

Importantly, the settlement agreement allows either party to move to reopen the case at any time "should issues requiring [the] Court's intervention arise." Under such circumstances, the compliance reports would form the record for any appropriate enforcement action before the District Court. Should, for example, Erie County fail to abide by the settlement, the agreement provides that the Court is fully empowered to order "any relief permitted by law or equity." Significantly, the agreement does not purport to preclude the District Court from providing such relief *sua sponte* if, on the basis of the reports, it finds non-compliance.

After the first compliance report was produced, Erie County moved that the order be filed under seal. The United States did not oppose the motion, and the District Court granted it. The Court also permitted future sealing of the reports.

In June of 2012, the New York Civil Liberties Union ("NYCLU") moved to intervene and to unseal the compliance reports.[4] The District Court granted NYCLU's motion to intervene, but denied its motion to unseal the reports. *United States v. Erie County, N.Y.*, No. 09-cv-849S,

---

[4] NYCLU clarifies here that in intervening, it only seeks to unseal the compliance reports, and not Erie County's own compliance records. *See* Intervenor-Appellant's Br. at 15 n.2.

5

2013 WL 4679070 (W.D.N.Y. Aug. 30, 2013). In so deciding, the Court found that the compliance reports qualified as judicial documents, since they were filed with the Court in a matter over which the Court retained jurisdiction and since they were relevant to the Court's exercise of judicial authority. *Id.* at *8-11. It then considered whether, under the First Amendment or the common law, the presumption of public access that applies to such judicial documents would mandate unsealing, and concluded that it would not. *Id.* at *12, *14.

The Court first found that the reports, though judicial documents, were not within the subset of such documents entitled to a First Amendment right of access. The Court construed the compliance reports to be akin to settlement negotiation documents, and believing that they had little bearing on its own exercise of Article III power, it held that they were not the types of judicial documents that the First Amendment would require be made available to the public. *Id.* at *11-12.

The Court also found that while the common law presumption of access was applicable to the reports, it was a weak presumption. *Id.* at *13-14. Here, too, the reports were construed by the Court to be similar to settlement negotiation documents and, as such, subject to the need for the kind of frank discussion among the parties that might be diluted upon disclosure. On that basis, the Court determined that the common law presumption of access was overcome. *Id.*

Accordingly, the District Court denied NYCLU's motion to unseal the compliance reports and declined to vacate its own standing order regarding the sealing of future reports.[5] *Id.* at *15. NYCLU appeals.[6]

We review the District Court's decision for abuse of discretion, although, since the First Amendment is implicated, we give the documents and proceedings "close appellate scrutiny." *Newsday LLC v. County of Nassau*, 730 F.3d 156, 163 (2d Cir. 2013). Indeed, in such cases, "we have traditionally undertaken an independent review of sealed documents, despite the fact that such a review may raise factual rather than legal issues." *Id.*

## II.

The notion that the public should have access to the proceedings and documents of courts is integral to our system of government. To ensure that ours is indeed a government of the people, by the people, and for the people, it is essential that the people themselves have the ability to learn of, monitor, and respond to the actions of their representatives and their representative institutions. This principle, as it applies to courts, has a long history. Indeed, the

---

[5] Although the District Court's decision on NYCLU's motion to unseal the reports and vacate the standing order regarding the future sealing of reports is an interlocutory order, we have jurisdiction to review it pursuant to the collateral order doctrine. *See generally United States v. Graham*, 257 F.3d 143, 147 (2d Cir. 2001).

[6] The United States has also filed a brief urging us to vacate the District Court's order. Erie County argues that, while we may consider NYCLU's argument, the United States' brief is not properly before us since the United States did not file a notice of appeal. A notice of appeal, however, only needed to be filed by NYCLU, since it was the only party against whom the district court ruled. *See* Fed. R. App. P. 4(a). We therefore consider the United States' arguments.

common law right of public access to judicial documents is said to predate even the Constitution itself. *See United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*").

As the common law right of public access has developed in this Circuit's doctrine, our approach to determining whether a document is a judicial document, and therefore one presumed to be publicly accessible, has been to emphasize the role of the document in the judicial process. Thus, in order to decide whether a document is a judicial document protected by the common law right of access, this Court considers whether it is "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (internal quotation marks omitted).

If we find that a document is a judicial document and therefore that at least a common law presumption of access applies, we must "determine the weight" of the presumption of access. *Id.* The weight to be given to the presumption of access is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II* "). "Finally, after determining the weight of the presumption of access, the court must balance competing considerations against [disclosure]." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). Only when competing interests outweigh the presumption may access be denied. *Id.* at 119-20.

But, and in a sense more tellingly, our Constitution, and specifically the First Amendment to the Constitution, also protects the public's right to have access to judicial documents. *See Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir. 2004). Indeed, the

8

First Amendment protection has been understood to be stronger than its common law ancestor and counterpart. *Id.* To determine whether this First Amendment right attaches in circumstances such as the one before us, we look, first, to whether "experience and logic" support making the document available to the public. *Lugosch*, 435 F.3d at 120. That is, we consider (a) whether the documents "have historically been open to the press and general public" (experience) and (b) whether "public access plays a significant positive role in the functioning of the particular process in question" (logic). *Id.* (internal quotation marks omitted).

Once a First Amendment right of access to judicial documents is found, the documents "may be sealed [only] if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Id.* (internal quotation marks omitted). And, "[b]road and general findings by the trial court . . . are not sufficient to justify closure." *Id*. (internal quotation marks omitted).

### III.

Under our precedents, therefore, before determining whether the common law or First Amendment requires that the compliance reports be made accessible to the public, we must consider whether they indeed are judicial documents. *See Amodeo I*, 44 F.3d at 145 (common law); *Hartford Courant*, 380 F.3d at 91-92 (First Amendment). We hold, as did the District Court, that the reports are such documents.

The focus of our analysis is on whether the compliance reports are "relevant to the performance of the judicial function and useful in the judicial process." *Lugosch*, 435 F.3d at 119

9

(quoting *Amodeo I*, 44 F.3d at 145). The conclusion that the reports fulfill this standard flows easily from our holding in *Amodeo I*, 44 F.3d at 145-46. There, as here, the reports were filed with the District Court by an expert whose duties were to oversee compliance. *Id.* While the reports in *Amodeo I* were prepared by a court-appointed officer pursuant to a consent decree, and the compliance consultants here were instead chosen by the parties and appointed pursuant to a settlement agreement, this distinction is of little importance. What matters is that the reports are filed with the District Court and become relevant to *its* judicial activities. That is, as in *Amodeo I*, the compliance reports would be considered by the Court for the purpose of ruling on an enforcement motion brought by either of the parties. *Id.* at 146.

Importantly, moreover, the compliance reports could form the basis for the District Court reinstating the civil proceedings *sua sponte* if the Court believes that the substance of the stipulated order of dismissal is not being fulfilled. The District Court "retains the power to enforce the Stipulated Order of Dismissal." Joint App'x at 226. As a result, while the Court may be moved by one of the parties to enforce the terms of the order, its power to ensure the fulfillment of the terms of the stipulated order of dismissal is not contingent on such motions by the parties. *See, e.g., Geller v. Branic Int'l Realty Corp.*, 212 F.3d 734, 737 (2d Cir. 2000) (holding that the district court has a "duty to enforce the stipulation that it has approved"); *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (per curiam) (holding that a stipulated order of settlement "was a consent to the exercise of the court's power to compel compliance"); *Limbright v. Hofmeister*, 566 F.3d 672, 674-75 (6th Cir. 2009) ("A district court may rely on any basis of jurisdiction to summarily enforce a settlement agreement that produced the dismissal of an earlier federal suit."); *Blue Cross & Blue Shield Ass'n v. Am.*

10

*Express Co.*, 467 F.3d 634, 638 (7th Cir. 2006) ("As long as [28 U.S.C.] § 1332 supplies authority to decide, the court may act without a fresh complaint."); *cf. Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 381 (1994) (noting that if the district court "'retain[ed] jurisdiction' over the settlement agreement" then "a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist").

The fact that the District Court has not yet acted *sua sponte* or adjudicated an enforcement action brought by the parties does not alter our analysis. The presumption of access to judicial documents is "based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *Amodeo II*, 71 F.3d at 1048. In light of the District Court's inherent "supervisory power over its own records and files," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978), even the District Court's inaction is subject to public accountability. The public's ability to scrutinize such judicial decision-making helps assure its confidence in the orderly administration of justice. If the reports show progress in compliance, the public can be confident that the judge's failure to intervene is appropriate; if the reports show worsening conditions, legitimate questions could be raised about the court's inaction.

In light of the role of the compliance reports in any *sua sponte* action by the District Court, as well as in any enforcement action brought by the parties, the compliance reports are manifestly relevant to the District Court's performance of its judicial function, and therefore are judicial documents.

11

## IV.

Having determined that the reports are judicial documents and therefore that at least a common law presumption of access applies to them, we would ordinarily continue with the common law analysis and determine the weight of the presumption and measure it against competing considerations. *See Lugosch*, 435 F.3d at 119-20.  This case, however, does not require such an approach. Since we find that the compliance reports are subject to a First Amendment right of access, which is stronger and can only be overcome under more stringent circumstances than the common law presumption, *see infra* Part VI, we need not, and do not, engage in such a common law analysis.

## V.

In this case, a trio of government bodies—Erie County, the Department of Justice, and the District Court for the Western District of New York—are involved in effectuating a settlement agreement to improve conditions at two public correctional institutions. Erie County wishes to keep the reports which measure its progress, or regress, under seal and, therefore, out of public view. Yet every aspect of this litigation is public. The United States Department of Justice is a *public* agency, which brought a claim before a *public* court, the District Court for the Western District of New York, arguing that a *public* government, Erie County, failed to meet constitutional requirements in operating two *public* institutions, the Erie County correctional facilities. And, critically, although a settlement is now in place, the public court retains jurisdiction over the dispute, and indeed may be moved, or move itself, to reinstitute civil proceedings. In a case where every aspect and angle is public, Erie County seeks, nonetheless, to

keep the compliance reports under the darkness of a seal. But the First Amendment does not countenance Erie County's position. Neither experience nor logic supports sealing the documents, and the District Court erred in concluding otherwise.

A.

In considering "experience," we focus on whether the documents are ones that "have historically been open to the press and general public." *Hartford Courant*, 380 F.3d at 92 (internal quotation marks omitted). First, as a baseline matter, we note that the notion of public access to judicial documents is a capacious one: the courts of this country have long recognized a "general right to inspect and copy public records and documents, including judicial records and documents" in part because the public has an interest in "keep[ing] a watchful eye on the workings of public agencies." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597-98 (1978).

Second, NYCLU points to several instances where reports like the ones at hand have been accessible to the public. It cites ongoing cases in district courts across the country where the reports of monitors appointed pursuant to consent decrees and settlement agreements in institutional-change litigation are publicly available. *See, e.g., United States v. State of New York*, No. 10-cv-858 (N.D.N.Y. filed July 14, 2010) (settlement agreement appointing monitors); *United States v. City of New York*, No. 10-cv-0060 (E.D.N.Y. filed Jan. 7, 2010) (consent judgment appointing monitors); *United States v. Cook County*, No. 10-cv-029460 (N.D. Ill. filed Dec. 3, 2013) (settlement agreement appointing monitors); *Harper v. Fulton County*, No. 04-cv-1416 (N.D. Ga. filed Oct. 21, 2013) (consent order approving settlement and appointing monitors). NYCLU also notes that the Supreme Court, in *Brown v. Plata*, 131 S. Ct. 1910, 1924-

13

25 (2011), a case about the constitutional rights of prisoners, relied on publicly available reports regarding California's compliance with consent decrees.

In light of these precedents making available the reports of monitors in institutional-change litigation and settlements, and especially those involving settlement agreements such as the one here, it is clear to us that "experience" supports unsealing the reports in this case.[7]

### B.

We also find that logic bears out this experience, since "public access plays a significant positive role in the functioning of the particular process in question." *Lugosch*, 435 F.3d at 120 (internal quotation marks omitted). The issues involved are manifestly ones of public concern and therefore ones which the public has an interest in overseeing. As the Supreme Court succinctly put it, the "conditions in this Nation's prisons are a matter that is both newsworthy and of great importance." *Pell v. Procunier*, 417 U.S. 817, 830 n.7 (1974). Moreover, the

---

[7] Erie County argues that, since NYCLU did not raise this "argument" below, we may not consider the fact that an early report pursuant to the suicide prevention agreement was made available to the public. While the fact that this report was made publicly available is not needed for our holding, and hence is not listed among the "experience" examples in the text, we pause to note that Erie County misunderstands our law in this regard. We may, and often do, decline to consider new *arguments* on appeal. *See, e.g., United States v. Lauersen*, 648 F.3d 115, 115 (2d Cir. 2011) (per curiam) (declining "to address the arguments" raised for the first time on appeal). But NYCLU's *argument*—that experience supports unsealing the reports—is not new on appeal; it was powerfully made below. On appeal, NYCLU offers an additional *fact* in support of that argument: that one such report was made available pursuant to the previous agreement. This fact, readily available in the record below, is one that we could properly consider if we wished.

Similarly, NYCLU's reference to other cases where the reports of monitors have made been available to the public is not, as Erie County again argues, a new argument made on appeal. Instead, it is an appropriate citation to authority, which is germane to, and part of, NYCLU's First Amendment argument, made both here and below.

public's interest is one that directly relates to the "functioning of governmental processes." *Press-Enter. Co. v. Super. Ct. of California*, 478 U.S. 1, 9 (1986). Access to the compliance reports enables the public to understand, monitor, and respond to the progress made towards altering what the Department of Justice, as enforcer of the nation's laws, alleged were unconstitutional conditions in Erie County correctional facilities. Access also permits the public to evaluate the Court's role in overseeing that progress. In short, access enables the public to decide whether the Court and the parties—all governmental entities—are doing their jobs in fulfilling the terms of the settlement agreement.

In this sense, allowing public access to the documents that inform judicial decisions reminds judges, in the exercise of their power, of the sovereign body which authorizes that power. *See, e.g., Amodeo II*, 71 F.3d at 1048 ("Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior."). These principles apply directly to this case. The United States District Court, and indeed the United States Department of Justice, will read the compliance reports and decide whether or not the terms of the stipulated order are being fulfilled, and if not, what action to take. As these public bodies exercise discretion and authority, it is important that they know that the public has access to the documents which form the basis of their decisions.

We therefore hold, in light (i) of the practice of providing access to reports such as these and (ii) of the logic of democratic monitoring of judicial processes, that the First Amendment right of access applies to the compliance reports at issue in this case.

## VI.

Recognizing that the First Amendment applies and protects the public's right of access does not end the matter, however. Our precedents hold that even this right can be overcome by "specific, on-the-record findings that higher values necessitate a narrowly tailored sealing." *Lugosch*, 435 F.3d at 126.

The District Court did not find that a First Amendment right attached and hence did not consider whether it could be overcome in this instance. Accordingly, we would ordinarily remand this question to that Court to engage in whatever additional fact-finding was needed for its resolution. *See id.*, 435 F.3d at 126-27. And this is what the United States, in its brief, recommends that we do. *See* United States of America Br. at 22.

At oral argument, however, Erie County conceded that it would have nothing to offer before the District Court that it had not already proffered. In light of this concession, we take it as given that we have Erie County's full array of facts and arguments in favor of a narrowly tailored sealing of the compliance reports. We are therefore able to consider the issue directly. Doing so, we conclude that the County's arguments, and the facts upon which they are premised, cannot justify even a narrowly tailored sealing.

In attempting to keep the reports sealed despite their First Amendment protection, the County posits a supervening need for frank, and hence confidential, discussions among the parties. In doing so, it analogizes this case to ones involving settlement negotiations. But that argument ignores the crucial fact that, in the case before us, a settlement has already been

reached. As the Department of Justice points out, unlike the documents sought in *United States v. Glens Falls Newspapers, Inc.*, 160 F.3d 853, 854 (2d Cir. 1998)—which included draft settlement agreements and attorney work product produced in preparation for settlement—the compliance reports are not documents made in preparation for settlement. In this case, settlement has long since been achieved. And many of the privacy concerns that inhere in pre-settlement negotiations simply do not apply. Thus, to mention just two, there is here no issue of attorney-client confidentiality or of divulging strategy.

Significantly, Erie County, in basing its sealing argument only on the aforementioned settlement contention, does not invoke "privacy interests," *In re New York Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987), or safety concerns, *see Lugosch*, 435 F.3d at 120, or for that matter, any other value that plausibly might be construed as being "higher" than the First Amendment values at stake.

On the basis of this record, we therefore find that the First Amendment right of access has not been overcome, and recognizing the "importance of immediate access where a right to access is found," *id.* at 126, we reverse the District Court's decision and order that the reports be unsealed forthwith. [8]

---

[8]    In so ordering, we do not, of course, exclude the possibility that the District Court may determine that some redactions may be necessary upon unsealing. *See Amodeo I*, 44 F.3d at 147. At argument, NYCLU conceded as much. For example, redacting medical information identifiable to particular prisoners would be especially appropriate.

**CONCLUSION**

We REVERSE the District Court's decision to keep the compliance reports under seal and VACATE its standing order that permitted future reports to be sealed.