REDEEMER COMMITTEE OF HIGH-
LAND CREDIT STRATEGIES
FUNDS, Petitioner,

v.

HIGHLAND CAPITAL
MANAGEMENT, L.P.,
Respondent.

16 Civ. 2668

United States District Court,
S.D. New York.

Signed April 25, 2016

Stuart Michael Sarnoff, O'Melveny & Myers LLP, New York, NY, Marc F. Feinstein, Sherin Parikh, Sonia Chan, O'Melveny & Myers LLP, Los Angeles, CA, for Petitioner.

Daniel Walter Levy, McKool Smith, New York, NY, Gary Cruciani, McKool Smith, P.C., Dallas, TX, for Respondent.

## MEMORANDUM ORDER

JED S. RAKOFF, UNITED STATES DISTRICT JUDGE.

On April 11, 2016, petitioner Redeemer Committee of Highland Credit Strategies Funds ("the Committee") filed under seal a petition to confirm an arbitration award. *See* Sealing Order, Dkt. 4. The sealing order was entered by the Judge presiding over Part I. By telephone conferences on April 12 and 13, 2016, the Court inquired of the parties as to the basis for sealing. After confirming that no party opposed the unsealing of the petition itself, the Court, on April 14, 2016, entered an order directing unsealing of the petition. *See* Order dated April 13, 2016, Dkt. 8. The Court also invited the parties to submit letters regarding the basis for sealing the materials accompanying the petition to confirm the arbitration award, including the award itself.[1] These letters, dated April 14, 2016 ("Highland Letter" and "Committee Letter," respectively), will be docketed along with this Opinion.

Although it was petitioner Redeemer Committee that initially sought the sealing order (as it was obliged to do pursuant to the terms of a protective order entered in the underlying arbitration), it is now respondent Highland Capital Management, L.P. ("Highland") that argues in favor of maintaining sealing. Highland claims, first, that unsealing the arbitration award would run counter to the law of Bermuda, and, second, that considerations of international comity outweigh the public interest in open access to court proceedings in this case. *See* Highland Letter. The Committee counters that Highland's reliance on Bermuda law is misplaced and inconsistent with the arbitration proceedings. *See* Committee Letter at 2. For the reasons explained below, the Court finds that it is questionable whether Bermuda law would apply, let alone mandate sealing, but that even if Bermuda law governs and would require sealing, considerations of international comity do not here override the strong presumption in favor of public access to judicial documents. The Court therefore orders the unsealing of all documents accompanying the Committee's petition to confirm the arbitration award.

Some necessary background to the parties' arguments appears in the arbitration award, to which the Court will henceforth openly refer. Highland (*i.e.*, Highland Capital Management, L.P.) manages the Highland Credit Strategies Master Fund, L.P., a Bermuda Exempted Mutual Fund Company (the "Master Fund"). *See* Declaration of Stuart Sarnoff, Esq., in Support of Petition to Confirm Arbitration Award, Exhibit B (Arbitration Award), ¶¶ 1–2. The Master Fund invested money received from two feeder funds: the Highland Credit Strategies Fund., L.P. and the Highland Credit Strategies Fund, Ltd. *See id.* ¶ 6.

On October 15, 2008, both feeder funds gave notice of their intent to liquidate. *See id.* ¶ 7. Highland and the investors agreed on a method of liquidating the funds and distributing the remaining assets to the investors, which was set forth in a "Joint Plan of Distribution of Credit Strategies Funds" (the "Joint Plan"). *See id.* ¶ 9; *see also* Sarnoff Declaration, Ex-

---

1. The Court's Order dated April 13, 2016 referred to the "issue of whether the declaration accompanying the petition, and its attachments, will be unsealed," but the Court sees no basis for a distinction between these specific materials and anything else submitted along with the petition, including the brief in support of confirmation and the Notice of Petition.

hibit A (Joint Plan). The Joint Plan provided for the establishment of a Redeemer Committee (*i.e.*, petitioners in the instant motion) to oversee Highland's liquidation of the Master Fund's assets. *See* Arbitration Award at ¶ 10. When disputes arose over this liquidation, the Committee initiated arbitration, pursuant to a clause in the Joint Plan providing that dispute resolution would be subject to arbitration conducted in New York by the American Arbitration Association. *See id.* ¶¶ 4, 11; Joint Plan § 8.04. The arbitration award was issued on April 6, 2016. *See* Arbitration Award at 57.

In its letter on sealing, Highland contends that Bermuda law applies and would require sealing of the arbitration proceedings. *See* Highland Letter. Specifically, Highland claims that the "Joint Plan was implemented in Bermuda in relation to Highland Credit Strategies Fund, Ltd. (a Bermuda company) by way of a scheme of arrangement" under "the Bermuda Companies Act 1981." Highland Letter ¶ 1. Highland explains that a scheme of arrangement in Bermuda is a court-sanctioned agreement between a company and its creditors, which "may provide for a more orderly winding-up of a company's affairs." *See id.* at ¶¶ 2–3. A Bermuda court may not alter the terms of such a scheme. *See id.* at ¶ 4, citing *Kempe v. Ambassador Insurance Co*, [1998] 1 WLR 271.

Highland indicates that the Joint Plan contained provisions regarding confidentiality and granted powers to the Redeemer Committee "subject to a requirement that they enter into confidentiality agreements to preserve the confidentiality of commercially sensitive and/or private information relating to the Scheme." Highland Letter at ¶¶ 1, 8. Moreover, according to Highland, the Scheme of Ar-

rangement incorporated all the terms of the Joint Plan, including those relating to confidentiality. *See id.*[2] Highland contends that the Bermuda court could not alter these confidentiality provisions and would not permit unsealing, since such a step "would in effect be an alteration to the terms of the Scheme which require confidentiality." *Id.* at ¶ 9.

Highland also appeals to more general principles of Bermuda law favoring confidentiality in arbitration and judicial proceedings. Highland notes that public access to pending court proceedings in Bermuda is restricted, except that the public can obtain a copy of the originating process, judgements, and orders, *id.* at ¶ 10, and that these restrictions would apply to a dispute, related to the Scheme, that came before the Bermuda court, *id.* at ¶ 12. Additionally, Highland claims that under Bermudian law, and as a matter of English law, there is an implied duty of confidentiality with respect to arbitrations, and that a Bermudian court would uphold the confidentiality of the instant proceedings brought to confirm the arbitration award. *See id.* ¶¶ 13, 15.

The Committee, by contrast, contends in effect in its letter that Bermuda law does not control. *See* Committee Letter at 2. The Committee explains that it did not assert a cause of action for violation of the Scheme—which, the Committee states, is "entirely distinct" from, though "based on," the Joint Plan—but, instead, the Committee alleged that Highland breached its common law and contractual duties, including its obligations under the Joint Plan. *See id.* at 1–2, citing Arbitration Award at ¶¶ 23, 25–27. In fact, the Committee argues, the Scheme does not apply to the fund that was the subject of the Commit-

---

**2.** The Scheme of Arrangement has not been provided to the Court.

tee's claims in arbitration, the Highland Credit Strategies Master Fund, L.P. (*i.e.*, the Master Fund), but only to one of its two feeder funds, the Highland Credit Strategies Fund, Ltd. *See* Committee Letter at 2. And Highland, claims the Committee, engaged in the alleged acts of misconduct that were the subject of the arbitration proceedings "at the master fund level." *Id.*

The Committee also points out that it did not initiate arbitration in Bermuda and states that the arbitration award is not based on Bermuda law. *See* Committee Letter at 1. Further, the Joint Plan is governed not by Bermuda law, but by New York law, and this plan contains an arbitration clause specifying that disputes are to be resolved via arbitration conducted in New York by the American Arbitration Association. *See id.* at 1–2, citing Joint Plan at ¶¶ 8.04, 8.05. For all these reasons, the Committee asserts, Highland is incorrect to rely on Bermuda law. *See* Committee Letter at 1.

The Court is not persuaded that Bermuda law applies to the question of whether the Court ought to keep under seal the materials submitted as part of the Committee's petition to confirm the arbitration award. As an initial matter, it is not unmistakably clear that the Joint Plan itself demands that these materials remain confidential. The confidentiality provisions of the Joint Plan cited by Highland are Sections 2.02 and 8.07. Section 2.02 provides that the Redeemer Committee will have access to certain pieces of information on the Master Fund "subject to the execution and delivery of customary and reasonable confidentiality agreements." *See* Joint Plan at § 2.02. Although Highland states that "[e]ach of the Redeemer Committee members has entered into a confidentiality agreement," Highland Letter at ¶ 8, Section 2.02 of the Joint Plan does not in itself

specify the requirements of these agreements, which have not been provided to the Court. The other cited confidentiality provision of the Joint Plan, Section 8.07, provides that "[p]ursuant to Federal Rule of Evidence 408 and any other applicable rules of evidence, this Plan and all negotiations relating hereto shall not be admissible in evidence in any proceeding other than a proceeding to enforce its terms." *See* Joint Plan at § 8.07. The instant proceeding might well be considered, at least in part, a proceeding "to enforce [the] terms" of the Joint Plan. Therefore, the Joint Plan—and any provisions of the Joint Plan incorporated into the Scheme that was sanctioned by Bermudian court order—may not require the confidentiality of all of the materials submitted under seal in this Court.

But even if the Joint Plan requires these materials to remain confidential, and the relevant confidentiality provisions were incorporated into the Scheme, the Court is still not convinced that Bermuda law demands that the proceedings of the instant petition remain sealed. The point that a Bermudian court would resist efforts to unseal the proceedings, whether by virtue of the court order sanctioning the Scheme or more general principles of Bermudian law favoring confidentiality, seems distinct from the issue the Court faces here. As Highland's letter states, "*[i]f* a dispute fell to be considered by the [Bermuda] Court ... the restrictions on access to the Court file ... would apply in relation to the dispute." Highland Letter at ¶¶ 11–12 (emphasis added). But the instant dispute is not being considered by a Bermudian court. Pursuant to the dispute resolution clause of the Joint Plan, the dispute was referred to arbitration conducted by the American Arbitration Association in New York. *See* Joint Plan at § 8.04. Further, the Joint Plan—the agreement that the Redeemer Committee instituted arbitra-

tion partially in order to enforce—is governed by New York law, not Bermuda law. *See.* Joint Plan at § 8.05. In sum, the Court is far from persuaded that Bermuda law applies here or that, if it does, it mandates sealing of the materials submitted along with the Committee's arbitration petition.

 However, even if Bermudian law applies and mandates sealing, the Court determines that any considerations of international comity militating in favor of respect for Bermudian law are outweighed by the public interest in open access to court proceedings. "The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch v. Pyramid Co. of Onondaga,* 435 F.3d 110, 119 (2d Cir.2006). "The presumption of access is based on the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice." *United States v. Amodeo,* 71 F.3d 1044, 1048 (2d Cir.1995).

 This weighty interest in public access applies with full force to documents filed in connection with a motion to confirm an arbitration award, as in the instant case. As an initial matter, "it is well settled in this District that the petition, memoranda, and other supporting documents filed in connection with a petition to confirm an arbitration award (including the Final Award itself) are judicial documents that directly affect the Court's adjudication of that petition." *Clearwater Ins. Co. v. Granite State Ins. Co.,* No. 15–cv–165, 2015 WL 500184, at *3 (S.D.N.Y. Feb. 5, 2015)(collecting cases). Further, although

> [a]rbitration proceedings are premised upon the parties' private agreement . . . The circumstance changes when a party seeks to enforce the fruits of their private agreement to arbitrate, *i.e.* the arbitration award, in federal court. . . . A

party to an arbitration proceeding that is subject to confirmation proceedings in a federal court cannot have a legitimate expectation of privacy in all papers pertaining to the arbitration because the party should know of the presumption of public access to judicial proceedings.

*Robert Bosch GmbH v. Honewell Intern. Inc.,* 14–cv–9432, 2015 WL 128154, at *1 (S.D.N.Y. Jan. 6, 2015). Therefore, "[i]n circumstances where an arbitration award is confirmed, the public in the usual case has a right to know what the Court has done." *Glob. Reinsurance Corp.-U.S. Branch v. Argonaut Ins. Co.,* No. 07–cv–8196, 2008 WL 1805459, at *2 (S.D.N.Y. Apr. 21, 2008), *as amended* (Apr. 24, 2008); *see also Veleron Holding, B.V. v. Stanley,* 12–cv–5966, 2014 WL 1569610, at *1 (S.D.N.Y. April 16, 2014) (noting that if an arbitration award were "confirmed or reduced to judgment by any court of law," that "would, at least in this country, expose it to the public.").

 Highland contends, however, that the principle of international comity should outweigh what it concedes is the "bedrock principle[ ] of American law" of "the presumption of public access to judicial documents." Highland Letter at 4. "Comity refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states." *Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Court for Southern Dist. of Iowa,* 482 U.S. 522, 543 n. 27, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987). Although the Court takes seriously the principle of international comity, it declines to hold that this consideration warrants blocking public access to the documents at issue here. The fact that the courts of another country would *arguendo* require sealing, especially when they take a much different approach than American courts to the publicity of

judicial proceedings more broadly, cannot in and of itself override the pressing interest in open access to court records. *Cf. Veleron,* 2014 WL 1569610, at *1 ("No principle of international comity requires this Court to conduct a proceeding to enforce the securities laws of the United States in secret simply because a related proceeding was cloaked in confidentiality.").[3]

 Highland appears to suggest that the fact that the instant case is a "commercial dispute" strengthens the case for sealing. *See* Highland Letter at 4. This is doubtful. Commercial disputes brought to the public courts, even through a motion to confirm an arbitration award, are not merely technical issues warranting no public engagement or oversight. On the contrary, "we do not operate secret commercial courts in the United States of America." *Veleron,* 2014 WL 1569610, at *1 (citing *Delaware Coal. for Open Gov't, Inc. v. Strine,* 733 F.3d 510, 520–21 (3d Cir.2013)). This is for a reason: commercial dealings, even between private parties, play an integral role in a market economy that intimately affects the lives of citizens, and the enforcement of legal obligations governing these dealings should not, at least as a general matter, be shrouded from the public view.

In sum, Highland has offered no "countervailing factors" or "higher values," *Lugosch,* 435 F.3d at 120, that would override the presumption of public access to the

materials attached to the instant motion to vacate the arbitration award. Accordingly, the Court orders all of these materials to be unsealed. Counsel are directed to file publicly all documents previously filed under seal within three business days.

SO ORDERED.

---

3. Highland cites two district court cases to justify its contention that the Court should seal the materials out of consideration for international comity. *See* Highland Letter at 4–5, citing *Strauss v. Credit Lyonnais,* 06–cv–702, 07–cv–914, 2011 WL 4736359 (E.D.N.Y. Oct. 6, 2011); *Millennium Inorganic Chemicals Ltd. v. National Union Fire Ins. Co. of Pittsburgh,* 893 F.Supp.2d 715 (D.Md.2012), *rev'd on other grounds,* 744 F.3d 279 (4th Cir.2014). But even assuming that international comity justified sealing in these cases,

these cases, which did not concern arbitration awards, are distinguishable from the instant case in certain respects. For example, the Court here has made no commitment to treat materials requested from another jurisdiction as "highly confidential," *Strauss,* 2011 WL 4736359, at *7; and the material that is the subject of the sealing request is not "testimony and accompanying evidence ... taken in the court of a foreign nation pursuant to letters rogatory," *Millennium Inorganic Chemicals,* 893 F.Supp.2d at 745.